**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **TIAWANDA D. HAMPTON,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|     **v.** ) | **CIVIL ACTION NO. 5:14-CV-111 (MTT)** |
| ) | |
| **MACON BIBB COUNTY TRANSIT** ) | |
| **AUTHORITY,** *et al.,* ) | |
| ) | |
|     **Defendants.** ) | |
| ) | |

<u>**ORDER**</u>

This matter is before the Court on Defendants City of Macon, Georgia and the Bibb County Commissioners' motion to dismiss (Doc. 7) and Defendants Macon Bibb County Transit Authority, the Authority Board Members, and John Alligood's[1] motion to dismiss (Doc. 12). Tiawanda Hampton's allegations, which the Court must accept as true at this early stage of the case, paint a dismal picture of management at the Macon Bibb County Transit Authority. But the question is not whether the Transit Authority is a good manager of its personnel; the question is whether Hampton's complaint properly states a claim for violation of federal or state law. With one exception, it does not. Accordingly, the City of Macon and County Commissioners' motion is **GRANTED**, and the Transit Authority, Authority Board Members, and Alligood's motion is **GRANTED in part** and **DENIED in part.**

_____

[1] Alligood is incorrectly identified in the complaint as John Allengood.

## I.  FACTUAL BACKGROUND

Plaintiff Tiawanda Hampton, who is African-American, began working for Defendant Macon Bibb County Transit Authority on August 27, 2007 as a bus driver. (Doc. 1 at ¶ 9).  She was later promoted to an administrative assistant and held that position until her termination on April 1, 2013.  (Doc. 1 at ¶ 9).

 On the morning of March 28, 2013, Hampton was walking toward the breakroom at the Transit Authority when she noticed Defendant John Alligood, the Caucasian manager of human resources, in another employee's office with a large assault rifle. (Doc. 1 at ¶ 10).  "Out of fear, and given the increase in workplace violence and incidents of shootings being reported nationwide," Hampton and her co-worker, Renee Williams, immediately reported Alligood's possession of the gun to the on-duty officer, Sharita Thomas.  (Doc. 1 at ¶ 11).  Officer Thomas requested that Hampton call the Transit Authority's general manager, Richard Jones,[2] and inform him of the situation. (Doc. 1 at ¶ 11).

Hampton tried to call Jones, but he did not pick up.  (Doc. 1 at ¶ 12).  Hampton then contacted a manager, June Slaughter, to report Alligood's possession of the assault rifle in the office building, but Slaughter stated that she was already aware Alligood had brought the gun to work.  (Doc. 1 at ¶ 12).  Because Hampton continued to feel unsafe and she did not know why Alligood had the assault rifle at work, she contacted Craig Ross, the Chairman of Defendant Board of Macon Bibb County Transit Authority.  (Doc. 1 at ¶¶ 13-14).  Ross advised her that guns were not permitted in the workplace and that he would contact Jones.  (Doc. 1 at ¶ 15).

---

[2] Jones is Caucasian.

Ross later called Hampton back to let her know he had advised Jones of Alligood's possession of the assault rifle in the building.  (Doc. 1 at ¶ 16).  Ross stated that Alligood's actions were unacceptable and against company policy.  (Doc. 1 at ¶ 16).  Ross also apologized to Hampton for Alligood's actions and told her she could go home if she was upset or felt unsafe.  (Doc. 1 at ¶ 18).

Hampton alleges Alligood was told by another employee that several employees were upset about the assault rifle in the building and had called management regarding the situation.  (Doc. 1 at ¶ 18).  Officer Thomas allegedly told Hampton that Alligood was looking for her, and Hampton left the main building and walked to another building because she feared for her safety.  (Doc. 1 at ¶ 19).

Jones eventually arrived at the building and requested to speak with Alligood, but Alligood had already left the premises.  (Doc. 1 at ¶ 20).  Hampton was also advised that Alligood had left, and she went back to the main building to retrieve her belongings and went home shortly after 9:00 a.m.  (Doc. 1 at ¶ 21).

Hampton returned to work the following day, and Jones asked that she provide a written statement regarding the incident.  (Doc. 1 at ¶ 22).  Hampton wrote the statement and gave it to Jones later that day.  (Doc. 1 at ¶ 23).  When Hampton arrived to work on April 1, she was advised that Jones wanted to meet with her.  (Doc. 1 at ¶ 24).  Hampton requested the presence of a neutral witness or the opportunity to record the meeting, but both requests were denied.  (Doc. 1 at ¶ 26).  Jones allowed his own witness, Slaughter, to attend the meeting.  (Doc. 1 at ¶ 27).  During the meeting, Jones told Hampton that Alligood made an error in judgment by bringing the assault rifle to work.  (Doc. 1 at ¶ 25).  Jones then repeatedly asked Hampton who authorized her to

call Ross and why she called him, causing Hampton to feel "badgered and harassed." (Doc. 1 at ¶¶ 28-29).  Jones stated that he should have never received a call from the Chairman of the Transit Authority Board for such an incident and told Hampton, "[W]hat happens at Macon Transit stays at Macon Transit." (Doc. 1 at ¶ 30).  Hampton alleges she was intimidated and afraid of Jones because of his aggressive demeanor, and she became too nervous to answer any of his questions. (Doc. 1 at ¶ 31).

Jones then advised Hampton that she could leave if she did not tell him who gave her permission to call Ross. (Doc. 1 at ¶ 32).  Hampton returned to her desk and continued her daily tasks, but within minutes, she was approached by Slaughter who advised Hampton that Jones wanted her to "get her purse" and leave the building. (Doc. 1 at ¶¶ 33-34).  Hampton complied. (Doc. 1 at ¶ 35).

Hampton reported back to work on the following day, April 2, and was again approached by Slaughter, who requested that Hampton turn over her keys. (Doc. 1 at ¶ 36).  Hampton was then told that Jones and Alligood wanted to meet with her in the conference room. (Doc. 1 at ¶ 37).  However, while Hampton was waiting in the conference room, Jones and Slaughter entered instead, and Jones told her there was a misunderstanding regarding what Slaughter said and Hampton needed "to leave until further notice." (Doc. 1 at ¶ 38).  Jones then asked another employee to bring him a pen and pad, but the employee entered with a digital tape recorder. (Doc. 1 at ¶ 39).  Jones turned on the recorder and repeated his instruction to Slaughter to have Hampton leave the building. (Doc. 1 at ¶ 39).  Jones began questioning Hampton about who authorized her to call Ross. (Doc. 1 at ¶ 40).  Because Hampton became nervous and did not respond to the questions, Jones stated for the recorder that she was being

terminated for insubordination for failure to answer his questions.  (Doc. 1 at ¶ 41).

However, Alligood was not terminated, and Hampton alleges he is still employed with

the Transit Authority.

Hampton has now asserted claims for race discrimination pursuant to Title VII,

retaliation,[3] violation of her First Amendment rights pursuant to 42 U.S.C. § 1983,

attorney's fees pursuant to 42 U.S.C. § 1988, intentional infliction of emotional distress,

and violation of the Georgia Whistleblower Statute.

## II.  DISCUSSION

### A.    Motion to Dismiss Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain

sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as

true, and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)

(internal quotation marks and citation omitted).  However, "where the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or

legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset*

*Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are

---

[3] Hampton has not asserted a legal basis for her retaliation claim.  However, Hampton has conceded that the claim should be dismissed to the extent it is redundant of her Title VII discrimination and First Amendment retaliation claims.  Accordingly, Hampton's retaliation claim is **DISMISSED without prejudice**.

dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B.    Title VII Race Discrimination Claim

Generally, Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of discrimination under Title VII, Hampton must show: (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class.  *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The Defendants do not contest whether Hampton has met the first three elements of a race discrimination claim.  Hampton has sufficiently pled that she is a member of a protected group, she was qualified for the position held, and her termination was an adverse employment action.  The Defendants argue, however, that Hampton has failed to sufficiently plead the fourth element because she has not identified a comparator who was similarly-situated.[4]  Hampton points to Alligood as her comparator, and the Defendants contend that comparison is inappropriate because

---

[4] Hampton has not alleged and does not contend she was replaced by someone outside her protected class.

Alligood did not engage in the same or similar misconduct as Hampton. The Defendants also contend that Hampton's race discrimination claim fails because she does not identify a factual basis from which it could be inferred that Hampton was intentionally discriminated against because of her race.

Although Alligood may ultimately prove not to be similarly-situated to Hampton, the Court cannot find as a matter of law that Hampton and Alligood are not similarly-situated at this stage. The actions of Hampton and Alligood are intertwined. Hampton was fired and Alligood was not. Thus, Hampton has sufficiently alleged a prima facie case of race discrimination. The allegations establishing the elements of her claim are also sufficient to support an inference of discrimination on the basis of race. Hampton does not have any further burden to allege facts showing direct discrimination at this stage.

**C.     First Amendment Violation Claim**

"The law is well-established that a [public] employee may not be discharged in retaliation for speech protected under the First Amendment." *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). The United States Supreme Court, in *Pickering v. Board of Education*, 391 U.S. 563 (1960) and *Connick v. Myers*, 461 U.S. 138 (1983), established a four-part test, commonly called the *Pickering* test, to determine whether retaliation against a public employee for her speech violates the First Amendment. *See, e.g.*, *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). Pursuant to this test, a public employee must show:

> (1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the [government] as an

employer; and (3) the speech played a substantial or motivating role in the adverse employment action. If the plaintiff establishes these elements, the burden shifts to the defendant to prove [(4)] it would have made the same adverse employment decision absent the employee's speech.

*Vila*, 484 F.3d at 1339 (citations omitted). However, the Court need not determine whether Hampton's allegations are sufficient to meet the *Pickering* test because she has failed to allege an adequate basis for holding the Transit Authority liable.

The Supreme Court has placed strict limitations on municipal liability under Section 1983. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A [municipality's] liability under [Section] 1983 may not be based on the doctrine of respondeat superior." *Id.* Instead, only when the entity's "official policy" causes a constitutional violation may a city be held responsible. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are three requirements for imposing Section 1983 liability on a municipality for its policies or customs. "[A] plaintiff must show: (1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). To establish the second element, a plaintiff must show either that the policy is facially unconstitutional or that a series of constitutional violations have occurred from which deliberate indifference can be inferred. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

Hampton merely alleges that the "Defendants acted pursuant to a policy, custom, and practice." (Doc. 1 at ¶ 58). In her response to the Defendants' motion, Hampton argues that a liberal construction of her complaint shows that "Defendant Jones stated the [Transit Authority's] official policy, which is 'What happens in Macon Transit, stays in

Macon Transit.'" (Doc. 15 at 14). Hampton further argues that her termination by Jones for violating this policy "bolsters the conclusion that Jones himself is the policy maker for the [Transit] Authority, in which case he is subject to direct liability."[5] (Doc. 15 at 14).

Thus, if anything, Hampton argues Jones is the culpable party for the alleged violation of her First Amendment rights. However, Jones is not named as a defendant in Hampton's complaint. Hampton's allegations are clearly insufficient to establish a claim for municipal liability against the Transit Authority, and the Transit Authority may not be held liable under a theory of respondeat superior. Accordingly, Hampton's Section 1983 free speech retaliation claim and her request for attorney's fees pursuant to her Section 1983 claim are **DISMISSED without prejudice**.

### D.     State Law Claims

Hampton has also asserted state law claims for the intentional infliction of emotional distress and a violation of the Georgia Whistleblower Act. Hampton premises her intentional infliction of emotional distress claim upon the conduct of Jones, who she again references as a defendant in this action. Jones is not a defendant, and Hampton has not asserted any basis for holding her former employer liable. Accordingly, Hampton's intentional infliction of emotional distress claim is **DISMISSED without prejudice**.

---

[5] Two important principles guide the determination of who qualifies as a final policymaker. "First, 'the authority to make municipal policy is necessarily the authority to make *final* policy.'" *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "Second, the alleged policymaker must have final policymaking authority with respect to the action alleged to have caused the particular constitutional or statutory violation." *Id.* (internal citations omitted). Although a constitutional violation caused by a final policymaker can be a sufficient basis for imputing liability to a municipality, Hampton has not alleged any facts in her complaint that would support a finding that Jones was acting as a final policymaker on behalf of the Transit Authority.

Under the Georgia Whistleblower Act, "[n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2). "Law, rule, or regulation" is defined to include "any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance." O.C.G.A. § 45-1-4(a)(2).

The Defendants argue this claim must be dismissed because Hampton has not alleged she engaged in protected conduct by reporting Alligood's possession of the gun on the premises, which is merely a violation of an internal company policy. Hampton responds that she has alleged the personnel policy is a rule or regulation of the Transit Authority. However, Hampton cites no authority that a personnel policy is the type of law, rule, or regulation contemplated by the Georgia Whistleblower Act, nor does she allege any facts to show the Transit Authority's personnel policy was adopted pursuant to a federal, state, or local statute or ordinance. Thus, Hampton has not sufficiently alleged that she engaged in protected activity under this Act. Accordingly, Hampton's Georgia Whistleblower Act claim is **DISMISSED without prejudice**.

### E.    Defendants Against Whom No Claims are Asserted

Defendants City of Macon, Georgia and the Bibb County Board of Commissioners have moved to be dismissed from the complaint because Hampton has not asserted any claims against them. Rather, the sole references to the City and Board of Commissioners are to identify them as Parties to this action. (Doc. 1 at ¶¶ 5, 7). In response, Hampton asserts that these Defendants have failed to file a

memorandum of law citing supporting authorities pursuant to M.D. Ga. L.R. 7.1, and she states it is not "clear what [the City and Board of Commissioners] contend is the precise basis—legal [or] factual—for the motion to dismiss." (Doc. 14 at 9).

Contrary to Hampton's assertions, the City and the Board of Commissioners have filed an adequate memorandum of law citing authority to show Hampton has failed to allege any facts, claims, or theories of legal liability against them. The Court agrees that Hampton's complaint fails to state a claim against these Defendants. Accordingly, the City and the Board of Commissioners are **DISMISSED as parties to this action**.

As discussed above, Hampton's only viable claim is her race discrimination claim. A Title VII claim may only be made against an employee's "employer." 42 U.S.C. § 2000e-2(a)(1). In Hampton's EEOC charge, she identifies the Transit Authority as her only employer and not the Authority Board Members in their official capacities. (Doc. 12-2). Further, individuals are not subject to liability under Title VII. *Dearth v. Collins,* 441 F.3d 931, 933 (11th Cir.2006). Hampton concedes that she did not intend to assert her Title VII claim against the individual Authority Board Members or Alligood, and no other claims are asserted against these Parties. Accordingly, the Authority Board Members and Alligood are **DISMISSED as parties to this action**.

### III. CONCLUSION

For the foregoing reasons, the City of Macon and County Commissioners' motion is **GRANTED**. The Transit Authority, Authority Board Members, and Alligood's motion is **GRANTED in part** and **DENIED in part**. Hampton's Title VII race discrimination claim against the Transit Authority shall go forward.

**SO ORDERED,** this 26th day of June, 2014.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT